UNITED STATES of America, Plaintiff–Appellee,

v.

Shanta A. HOWELL, and George T. Howell, III, Defendants–Appellants.

Nos. 93–1307, 93–2139.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 9, 1994.

Decided Aug. 15, 1994.

James A. Shapiro, Asst. U.S. Atty. (argued), Office of U.S. Atty., Criminal Div., Barry R. Elden, Asst. U.S. Atty., Office of U.S. Atty., Criminal Receiving, Appellate Div., Chicago, IL, for U.S.

Kent R. Carlson (argued), Chicago, IL, for Shanta A. Howell.

Gary J. Ravitz (argued), Chicago, IL, for George T. Howell, III.

Before WOOD, Jr., EASTERBROOK and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

George T. Howell was convicted in the district court of three counts of being a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1). His wife, Shanta Howell, was convicted of making a false statement on ATF Form 4473, in violation of 18 U.S.C. § 924(a)(1)(A). It was the government's theory of the case that Mr. Howell was the true purchaser of the firearms and that Mrs. Howell acted as the "straw purchaser" for her husband, who, as a convicted felon, could

not legally purchase a firearm. For the reasons that follow, we affirm.

## I

### A. *Background*

On March 22, 1992, Mr. And Mrs. Howell were in Bob's Sport Shop ("Bob's") in Justice, Illinois. Mr. Howell selected as purchases a Colt .44 magnum Anaconda revolver and a Colt .357 caliber King Cobra revolver. However, at the time of the transaction, it was Mrs. Howell who displayed her Firearm Owners Identification ("FOID") card[1] and signed the invoices as the apparent buyer—in spite of the fact that, throughout the selection process, she had shown no interest in the guns. Mrs. Howell used the name "Shanta Armand" on the invoices at Bob's.

In completing the sale, Bob Tabordon, the owner of Bob's Sport Shop and a federal firearms licensee, had asked Mr. Howell for his FOID card. According to Tabordon, Mr. Howell replied that they would use his wife's card, and Tabordon accepted her FOID identification for the purchase. At one point Tabordon asked Mr. Howell if he had a FOID card, and Mr. Howell answered that he did. Tabordon testified that he had no knowledge that George Howell was a convicted felon.[2] *Id.* The Howells made a deposit and put the guns on layaway in Mrs. Howell's name. On subsequent occasions, additional payments were made. Sometimes Mr. Howell came to the store alone to make these payments; at other times both Howells returned to Bob's together for this purpose.

On May 2, 1992, the Howells went to Bob's to pick up the King Cobra. Mrs. Howell completed the customer information portion of Form 4473, the form that the United States Bureau of Alcohol, Tobacco and Firearms ("ATF") requires to be filled out before a gun can be purchased. By signing the form, Mrs. Howell certified that she was the actual "transferee (buyer)" of the King Cobra.[3] She also presented her FOID card. On June 12, 1992, the Howells once again returned to Bob's. On that occasion, Mr. Howell had in his possession a Smith & Wesson Model 4006. He explained to Tabordon that he was unhappy with the feel and general performance of the weapon and wanted Tabordon to sell it on consignment. Mrs. Howell's name was written on the consignment invoice.

On June 26, 1992, while Mr. Howell was driving on the Dan Ryan Expressway, he narrowly missed hitting the cars of an off-duty police officer and, later, of an Immigration and Naturalization Service ("INS") officer. The INS officer activated his flashing lights and began pursuing Mr. Howell. After a several-mile chase at fast speeds, Mr. Howell was stopped. The police officer later assisted the INS officer by searching Mr. Howell's car. On the back seat in a gym bag was the King Cobra revolver. An Illinois state trooper then arrived, arrested Mr. Howell, and took possession of the gun.

The next day the state trooper asked an ATF agent to trace the King Cobra. The ATF agent traced the weapon to Bob's, learned that it had been purchased in the name of Mrs. Howell, and questioned Tabordon about the Howells' other purchases. When the agent found out that the Anaconda was still on layaway and that the Smith & Wesson was still on consignment, he asked Tabordon for permission to install audio and video equipment to record an undercover firearm transaction with the Howells. ATF Agent Reichert, posing undercover as a newly-hired sales clerk, called Mr. Howell and negotiated the purchase of the Smith & Wesson. When the Howells came into Bob's on July 13, 1992, to complete the gun sale, the transaction was videotaped. Mr. Howell discussed with the "salesman" Agent Reichert

---

1. Illinois residents may not purchase guns without a FOID card issued by the state. However, as this court has noted, a convicted felon like George Howell may not own a firearm and is not eligible for a FOID card. *See United States v. Haddad*, 10 F.3d 1252, 1255 (7th Cir.1993).

2. The ATF form requires a gun purchaser to certify that he has not been convicted previously of an offense punishable by a term of imprisonment greater than one year. George Howell had been convicted of four burglaries. His FOID card had been revoked on August 4, 1983, four months after his conviction for the first two burglaries. Tr. 260; O.R. 146 at 2.

3. *See infra* note 5 (text of the ATF form certification provision).

his preference for Glock handguns, because they had less "kickback," and mentioned that he had two Glocks and intended to get two more. He and Agent Reichert then agreed on a price of $400 for the Smith & Wesson, the proceeds of which would pay off the balance on the Anaconda in layaway. While Mr. Howell was holding and sighting the Anaconda, the agent commented that the Anaconda would never fit into Mrs. Howell's hand. Mr. Howell agreed by replying "no." Tr. 298; O.R. videotape at 10. The agent further observed that Mrs. Howell "ain't even got any interest in these things," and Mr. Howell replied, "Right." *Id.* Mrs. Howell, standing beside her husband, said nothing. Tr. 303. When completing the transaction, the agent asked Mr. Howell for his FOID card, and then stated, in feigned realization of Mrs. Howell's presence, "Ah, OK, that's why she's here." Mr. Howell agreed, repeating "That's why she's here." O.R. videotape at 12.

Agent Reichert began to show Mrs. Howell how to fill out the ATF form. But Mrs. Howell interrupted him and explained that she knew the form, that she had done it before. Mr. Howell then stated that she had done it "lots of times.... In fact, this is number four." O.R. videotape at 12. Mrs. Howell presented her FOID card and signed at the bottom of the ATF form, certifying that she was the "transferee (buyer)" of the Anaconda. Tr. 302. Mr. Howell took physical possession of the Anaconda; he accepted the $400 in payment for the Smith & Wesson on consignment, and paid the $360 plus tax still owed on the Anaconda. O.R. videotape at 12. Mrs. Howell left Bob's, without the Anaconda, to go shopping; Mr. Howell left several minutes later with the gun. They met at their van and drove off. ATF agents later stopped and arrested Mr. Howell.

State Trooper Hunt also participated in this arrest. He spoke with Mrs. Howell, who had not been placed under arrest at that time. When asked where she lived, Mrs. Howell gave the state trooper first one address, then another. She also stated that she had never been to Bob's before, and that she did not think her husband had. Mrs. Howell stated that she had purchased only one gun in the past, a Taurus pistol. She invited Trooper Hunt to look in her purse for the Taurus receipt. He found in her purse four different gun receipts. The trooper then told Mrs. Howell that he did not believe she was telling him the truth, and read her constitutional rights to her. A few minutes later, at the police station, Mr. Howell shouted to Mrs. Howell, "Heroes are zeroes. Don't tell them anything, zero. I love you, baby. You're the only woman for me." Tr. 206. Mr. Howell then asked Trooper Hunt what kind of gun he carried. When Trooper Hunt told him, Mr. Howell replied that his next gun was going to be one by the same manufacturer. Trooper Hunt responded that he did not think Mr. Howell would be buying any more guns. Mr. Howell rejoined that he loved guns and would always have them.

### B. *Procedural History*

On November 16, 1992, the Howells were tried before a jury on a four-count indictment. In three counts George Howell was charged with being a felon in possession of firearms, in violation of 18 U.S.C. § 922(g)(1). Shanta Howell was charged in the fourth count with misrepresenting herself as the true buyer of those guns, in violation of 18 U.S.C. § 924(a)(1)(A).[4]

On November 19, 1992, the jury returned a verdict of guilty against both defendants on all counts. Mr. Howell was sentenced as an armed career criminal to 210 months of imprisonment, to be followed by two years of supervised release. Mrs. Howell was sentenced to four years of probation, which included the first six months served in home detention.

---

4. Although § 924(a)(1)(A) appears in a section of the Code entitled "Penalties," there are numerous unpublished appellate decisions treating this section as establishing a substantive offense. Indeed, there are no decisions, published or unpublished, that squarely address the issue. As far as we can tell, no defendant, including the present one, has ever questioned directly the section's status as an offense independent from 18 U.S.C. § 922(a)(6). *Cf. United States v. Sherbondy*, 865 F.2d 996, 1001–03 (9th Cir.1988) (discussing the substantive aspects of other subsections of 18 U.S.C. § 924).

Both Howells have appealed. Mrs. Howell submits that the evidence was insufficient for the jury to conclude that she misrepresented herself as the "consignee (buyer)" of the Anaconda. Both Howells challenge the district court's refusal to instruct the jury concerning their entrapment by estoppel defense. Mr. Howell also contends that he was improperly sentenced as an armed career criminal. We consider each issue below.

## II

## ANALYSIS

A. *Sufficiency of the Evidence Against Mrs. Howell*

■ Mrs. Howell claims that there was insufficient evidence to support her conviction for making a false statement on ATF Form 4473, in violation of 18 U.S.C. § 924(a)(1)(A). We review a challenge to the sufficiency of the evidence under the standard enunciated in *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979): "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

Mrs. Howell submits that the government was required to prove that she made a false statement on ATF Form 4473 and that she knew it was false. However, Mrs. Howell claims, the answers she gave in Section A were true and correct: The general identification questions (name, sex, height, weight, race, address, date and place of birth) and questions about her legal status were not challenged by the government.[5] Her signature certified truthful answers; her conviction must therefore be reversed, she contends.

Mrs. Howell is correct that the government does not challenge any specific answer she provided on the form. The government's position is that Mrs. Howell was not the "transferee (buyer)" of the firearm, but rather a "straw purchaser" for her husband, and thus that her signature on the ATF form certifying that she was the Anaconda's true purchaser was false. Mrs. Howell's reply is twofold. First, she states that she consid-

5. The Firearm Transaction Record, ATF Form 4473, requires the "transferee (buyer)" to certify the following questions with a "yes" or a "no" answer:

(a) Are you under indictment or information* in any court for a crime punishable by imprisonment for a term exceeding one year? *A formal accusation of a crime made by a prosecuting attorney, as distinguished from an indictment presented by a grand jury.

(b) Have you been convicted in any court of a crime punishable by imprisonment for a term exceeding one year? (NOTE: A "yes" answer is necessary if the judge could have given a sentence of more than one year. A "yes" answer is not required if you have been pardoned for the crime or the conviction has been expunged or set aside, or you have had your civil rights restored and, under the law where the conviction occurred, you are not prohibited from receiving or possessing any firearm.)

(c) Are you a fugitive from justice?

(d) Are you an unlawful user of, or addicted to, marijuana, or any depressant, stimulant, or narcotic drug, or any other controlled substance?

(e) Have you ever been adjudicated mentally defective or have you ever been committed to a mental institution?

(f) Have you been discharged from the Armed Forces under dishonorable conditions?

(g) Are you an alien illegally in the United States?

(h) Are you a person who, having been a citizen of the United States, has renounced his/her citizenship?

The form states that "[a]n untruthful answer may subject you to criminal prosecution." At the end of the questions the form requires a signature of the transferee (buyer) below this statement:

I hereby certify that the answers to the above are true and correct. I understand that a person who answers "Yes" to any of the above questions is prohibited from purchasing and/or possessing a firearm, except as otherwise provided by Federal law. I also understand that the making of any false oral or written statement or the exhibiting of any false or misrepresented identification with respect to this transaction is a crime punishable as a felony.

Mrs. Howell signed the form "Shanta Armand" in the box labeled "Transferee's (Buyer's) Signature–Execute at Time of Actual Transfer of Firearm(s)" and dated it 7–13–92.

Below her signature, in Section B, Robert Tabordon, "transferor (seller)" of the firearm, recorded the following information: Mrs. Howell's FOID number, another identification number, a description of the Anaconda revolver purchased, Tabordon's corporate name and Federal firearms license number, and his dated signature.

ered herself the buyer even though she was not necessarily the ultimate user of the firearm. Second, she asserts that, because firearms licensee Tabordon had signed part B of Form 4473, certifying that it was legal to sell the firearm to her even though he knew the guns were for her husband, she could reasonably rely on his "validation" of her transferee status when she signed the form on July 13, 1992. According to Mrs. Howell, therefore, her signature on ATF Form 4473 was not false, and the evidence failed to prove beyond a reasonable doubt that Mrs. Howell knew her statement (that she was a transferee) was false.

■ To establish a violation of § 924(a)(1)(A), the government must prove that the defendant knowingly made a false statement with respect to information that the law requires a federally licensed firearms dealer to keep.[6] On the videotape, the jury saw and heard a conversation between Mr. Howell and ATF agent Reichert in which they agreed that the Anaconda revolver would not fit in Mrs. Howell's hand, that she had no interest in guns, and that she was there to present her FOID card. When the agent commented that he did not think Mrs. Howell was picking up the Anaconda for herself, neither defendant objected. The jury also heard on the tape Mrs. Howell's explanation that she knew how to fill out an ATF form, and Mr. Howell's statement that she had done it four times.[7] The ATF form which she signed gave an explicit warning against "straw purchases" on the back of the form. On the back side of Form 4473 are two significant notices to the transferor (seller) and transferee (buyer). The first warns that the "sale or delivery of a firearm by a licensee to an eligible purchaser who is acting as an agent, intermediary or 'straw purchaser' for someone whom the licensee knows or has reasonable cause to believe is ineligible to purchase a firearm directly, may

result in violation of the Federal firearms laws." The second advises the transferee (buyer) to "be familiar with the provisions of law."

The jury also had before it other evidence: Mrs. Howell's signature on the invoices for the Anaconda and King Cobra that Mr. Howell had selected on March 22, 1992; her completed ATF form as purchaser of the King Cobra on May 2, 1992; and her name on the consignment invoice for sale of the Smith & Wesson. A jury could reasonably conclude from the evidence that Mr. Howell did all the decision-making when selecting the revolvers and handled all the negotiating when selling the Smith & Wesson to the undercover agent, and that Mrs. Howell did all the paperwork with her valid FOID card. In addition, State Trooper Hunt testified that Mrs. Howell had lied about her address, the number of times she had gone to Bob's Sport Shop, and the number of gun receipts in her purse.

The essence of this case is that Mr. Howell could not have purchased firearms lawfully because he was a felon. Yet the evidence clearly showed that Mr. Howell had a keen interest in firearms, knew all about firearms, owned firearms (six, he told agent Reichert on the video), and that Mrs. Howell exhibited no interest in them. The jury was entitled to conclude, beyond a reasonable doubt, that Mrs. Howell was no more than a straw purchaser, "an eligible purchaser who is acting as an agent, intermediary, or 'straw purchaser' for someone" who is ineligible to purchase the firearm directly. *See United States v. Ortiz–Loya*, 777 F.2d 973, 979 (5th Cir.1985) (holding in a prosecution under 18 U.S.C. § 922(a)(6) that defendant who signed ATF form as "purchaser" for the true buyer of the weapon has made a misstatement that is a misrepresentation of material fact); *United States v. Lawrence*, 680 F.2d 1126, 1128 (6th Cir.1982) (determining in a prosecution un-

6. *Cf. United States v. Petitjean*, 883 F.2d 1341, 1345 (7th Cir.1989) (holding that, to establish a violation of § 922(a)(6), the government must prove that the defendant knowingly made a false statement to a federally licensed firearms dealer when acquiring a firearm, and that the false statement was likely to deceive the dealer as to the lawfulness of the sale).

7. *Cf. United States v. Straach*, 987 F.2d 232, 237–40 (5th Cir.1993) (relying partially on audiotaped evidence to support conviction under 18 U.S.C. § 922(b)(3) of gun dealer who sold to straw purchasers).

der 18 U.S.C. § 922(a)(6) that defendant who signed ATF form with no intention of keeping the weapons is not transferee or buyer).

In sum, the evidence of record shows that Mrs. Howell was not involved in the selection of the revolver, could not have held the weapon she "purchased" in her hand because it was too large, was present to complete the paperwork after the decision of purchase was made, and did not take possession of the gun after the purchase. In addition, although Mrs. Howell had a valid FOID card, her husband, a felon who made it clear that the weapon was for his use, did not possess the needed card. A jury reasonably could find that the evidence proved that Mrs. Howell was the straw purchaser for her husband and that she lied by signing her name on the ATF Form as the "buyer" of the revolver. *See Lawrence*, 680 F.2d at 1128. The evidence was more than sufficient to support Mrs. Howell's conviction.[8]

B. *Jury Instruction on the Howells' Theory of Defense*

■ At the jury instruction conference, Mr. and Mrs. Howell tendered several proposed instructions designed to present an "entrapment by estoppel" theory of defense. For example, the Howells' proposed Instruction 8A stated: "Bob Taisbordon's acts and statements induced them to believe that they were authorized to purchase and possess guns on the basis of Mrs. Howell's FOID card and her signature on the ATF 4473 form." The defendants' basic position was that Taisbordon was an agent of the federal government by virtue of his federal firearms license.

The district court refused to give any of the instructions on this theory. The court was of the view that the defense was not warranted by the law or the facts of the case. Instead, the court instructed the jury that the defendants' theory of the case was that they did not knowingly possess guns or falsify the ATF form: "It is George and Shanta's theory in this case that the prosecution has failed to prove beyond a reasonable doubt as to either defendant that they acted knowingly." Tr. 527.

On appeal, the Howells claim that the court's refusal to instruct the jury on this defense denied them the right to present a defense and to receive a fair trial. They point out that ATF Form 4473 states that the "transferor (seller) of a firearm is responsible for determining the lawfulness of the transfer and for keeping proper records of the transaction," and argue that, under such a delegation of responsibility, a federal firearms licensee becomes an agent of the federal government authorized to determine the legality of a gun transfer. Because Taisbordon often let George Howell handle the guns and never believed the guns were intended for Shanta Howell's personal use, his certification of the purchases negated the alleged crimes themselves, claim the Howells. The defendants rely on two cases in which the defense of entrapment by estoppel was successful and the defendants' firearms convictions reversed. *See United States v. Tallmadge*, 829 F.2d 767 (9th Cir.1987) (a federally licensed firearms dealer had told the defendant that he could lawfully purchase firearms, despite a prior felony conviction that had been reduced to a misdemeanor conviction by the state court); *United States v. Brady*, 710 F.Supp. 290 (D.Col.1989) (defendant had relied on a state judge's erroneous advice, offered during an official proceeding, that he could continue to possess firearms for his hunting and trapping business).

■ The defendants are entitled to a theory of defense instruction if (1) they propose a correct statement of the law; (2) their theory is supported by the evidence; (3) their theory is not part of the charge; and (4) the failure to include an instruction on defendants' theory of defense would deny defendants a fair trial. *United States v. Elder*, 16 F.3d 733, 738 (7th Cir.1994). We defer to the substantial discretion of the district court for the specific wording of the instructions and for the decision to reject a

---

8. Mrs. Howell also submits that the firearms dealer, Bob Taisbordon, knew that the real buyer was her husband, and that his conduct therefore vitiates her own liability for misrepresenting herself as the true purchaser of the Anaconda. As we discuss at length in the following section of this opinion, the defense of estoppel is not available to Mrs. Howell.

proposed instruction, as long as the essential points are covered by the instructions given. *United States v. Scott,* 19 F.3d 1238, 1245 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 163, 130 L.Ed.2d 101 (1994).

In this case the one "entrapment by estoppel" defense instruction that set forth the elements of that defense, Instruction 8A, stated that Tabordon was a federal official by virtue of his federal firearms license. The government submits that the instruction was an incorrect statement of the law because Tabordon was not a federal official.

 Entrapment by estoppel, grounded in the Due Process Clause of the Fifth Amendment, is a defense that is rarely available. In essence, it applies when, acting with actual or apparent authority, a government official affirmatively assures the defendant that certain conduct is legal and the defendant reasonably believes that official. *United States v. Austin,* 915 F.2d 363, 366 (8th Cir.1990), *cert. denied,* 499 U.S. 977, 111 S.Ct. 1626, 113 L.Ed.2d 722 (1991). The Supreme Court first recognized this defense in *Raley v. Ohio,* 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959), in which the Court reversed state law contempt convictions of those who refused to answer questions because they relied on an erroneous statement by a state official that they were protected by the self-incrimination clause of the state constitution. The Court continued to apply the doctrine in *Cox v. Louisiana,* 379 U.S. 559, 568–69, 85 S.Ct. 476, 482–83, 13 L.Ed.2d 487 (1965), in which the Court again reversed the defendants' state law convictions for picketing across from the courthouse because a responsible state official had permitted the picketing. The common thread in the case-law applying the defense is an affirmative misrepresentation of the law by a government official, reasonable reliance, and action upon that misrepresentation by a defendant. When the defense is applicable, it prevents the government from punishing one who reasonably followed the misstatement of one of its own officials. To allow such punishment "would be to sanction the most indefensible sort of entrapment by the State—convicting a citizen for exercising a privilege which the State clearly had told him was available to him." *Raley,* 360 U.S. at 438, 79 S.Ct. at 1266.

The cases in the courts of appeals follow the approach of the Supreme Court. They require, in general terms, that the one misleading the defendant be an official of the state; that he actively mislead the defendant; and that the defendant's reliance be actual and reasonable in light of the identity of the agent, the point of law represented, and the substance of the misrepresentation.[9]

9. *See, e.g., United States v. Troncoso,* 23 F.3d 612, 616 (1st Cir.1994) (holding that appellant fails to satisfy threshold element of showing that government official erroneously advised him that the act of conviction was actually legal when committed); *United States v. Nichols,* 21 F.3d 1016, 1018 (10th Cir.1994) (holding entrapment by estoppel inappropriate because no allegation of affirmative representation or "active misleading" by government agent that defendant was able to possess firearm after probation ended); *United States v. Corso,* 20 F.3d 521, 528–29 (2d Cir. 1994) (discussing elements of the doctrine, refusing to apply defense because there was no communication from an authorized government official to the defendant that his acquisition of illegal receivers was lawful); *United States v. Baptista-Rodriguez,* 17 F.3d 1354, 1368 n. 18 (11th Cir. 1994) (acknowledging Eleventh Circuit's general recognition of the defense); *United States v. Weitzenhoff,* 1 F.3d 1523, 1534–35 (9th Cir.1993) (discussing defense but refusing to apply it because appellants do not point to a false statement by government official upon which they relied), amended and superseded on other grounds, 35 F.3d 1275 (9th Cir.1994); *United States v. Bazargan,* 992 F.2d 844, 849 (8th Cir.1993) (ruling that the defense has no application because INS did not misrepresent information); *United States v. Clark,* 986 F.2d 65, 69–70 (4th Cir.1993) (holding that defense fails because defendant presented no evidence of reasonable reliance on misleading statements by government official); *United States v. Aldridge,* 985 F.2d 960, 961 (8th Cir.) (ruling that defendant failed to establish the defense by undisputed evidence), *cert. denied,* —— U.S. ——, 113 S.Ct. 2947, 124 L.Ed.2d 695 (1993); *cf. United States v. Etheridge,* 932 F.2d 318, 321 (4th Cir.) (refusing to apply the defense when a *state* trial judge erroneously had informed a convicted felon that he could own guns for hunting purposes and holding that to apply the defense under these circumstances "would penalize the wrong government—the government that prosecuted the appellant rather than the government that mistakenly and misleadingly interpreted the law"), *cert. denied,* —— U.S. ——, 112 S.Ct. 323, 116 L.Ed.2d 264 (1991); *United States v. Bruscantini,* 761 F.2d 640, 641–42 (11th Cir.) (refus-

In *United States v. Tallmadge*, 829 F.2d 767 (9th Cir.1987), the Ninth Circuit case on which defendants rely, the court treated the firearms licensee as a state official and excused the purchaser for his illegal gun possession. The defendant honestly told the gun dealer he had been convicted of a felony that was later reduced to a misdemeanor; the owner told him that, under those circumstances, he could own a firearm. The majority explained that a licensed firearms dealer is a federal agent:

> Clearly, the United States Government has made licensed firearms dealers federal agents in connection with the gathering and dispensing of information on the purchase of firearms. Under these circumstances, we believe that a buyer has the right to rely on the representations of a licensed firearms dealer, who has been made aware of all the relevant historical facts, that a person may receive and possess a weapon if his felony conviction has been reduced to a misdemeanor.

*Tallmadge*, 829 F.2d at 774. The dissenting judge of the panel expressed his concern "with the majority's apparent willingness to allow individuals with only the most tenuous relationship to the government to bind it with respect to the interpretation and enforcement of the criminal laws." *Id.* at 777. He pointed out that the gun dealer was not a federal employee and had no authority to bind the government; moreover, the dealer's representations did not amount to the "affirmative conduct" required to invoke estoppel against the government. *Id.* at 778. Furthermore, continued the dissent, Tallmadge's reliance on the gun dealer's advice was inherently unreasonable. Finally, the dissenter reviewed the calamitous repercussions if firearms dealers were permitted to legitimize otherwise illegal gun transactions: "The idea that the holder of a government license can estop the government's enforcement of its penal laws has explosive potential." *Id.* at 779.

A number of circuits have followed the dissent in *Tallmadge*.[10] These cases maintain that a licensed firearms dealer is not a government official for purposes of the entrapment by estoppel defense. *See, e.g., United States v. Billue*, 994 F.2d 1562, 1568–69 (11th Cir.1993) (holding that a federal license to sell firearms does not transform private licensees into government officials, thereby creating a potential entrapment by estoppel defense), *cert. denied*, —— U.S. ——, 114 S.Ct. 939, 127 L.Ed.2d 230 (1994); *United States v. Etheridge*, 932 F.2d 318, 320–21 (4th Cir.) (rejecting *Brady* and *Tallmadge* and holding that government was not estopped from prosecuting defendant for possession of shotguns, despite his reliance on erroneous advice of state trial judge), *cert. denied*, —— U.S. ——, 112 S.Ct. 323, 116 L.Ed.2d 264 (1991); *United States v. Austin*, 915 F.2d 363 (8th Cir.1990) (holding that federally licensed firearms dealers are not public officials for purposes of entrapment by estoppel defense), *cert. denied*, 499 U.S. 977, 111 S.Ct. 1626, 113 L.Ed.2d 722 (1991).

We now turn to the case before us. As a threshold matter, we conclude that Mr. and Mrs. Howell fail to demonstrate that there is a factual basis for the defense. The defendants never claimed that they received affirmative advice or information from Bob Tabordon that George Howell was legally permitted to possess a firearm. Indeed, they can point to no specific misleading statement on which they relied. The firearms dealer's signature on part B of the ATF form, after Mrs. Howell had completed part A, does not constitute active misleading. Tabordon stated that he never gave any advice, and, in fact, never knew about George Howell's prior felony conviction; it was Mr. Howell who misrepresented to Tabordon that he had a FOID card. Because Tabordon did not mis-

---

ing to apply the defense when state judicial and prosecutorial officials had told the defendant that his plea of nolo contendere did not make him a convicted felon), *cert. denied*, 474 U.S. 904, 106 S.Ct. 271, 88 L.Ed.2d 233 (1985).

**10.** Even in the Ninth Circuit, a different panel of the circuit court questioned the *Tallmadge* deci-

sion: "Whatever our disagreements may be with the court's ruling in *Tallmadge, see, e.g.,* at 775–82 (Kozinski, J., dissenting), it is the law of the Circuit and we are bound to follow it." *United States v. Clegg*, 846 F.2d 1221, 1224 (9th Cir. 1988). *See United States v. Billue*, 994 F.2d 1562, 1569 n. 6 (11th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 939, 127 L.Ed.2d 230 (1994).

lead the Howells concerning the legality of their conduct, they cannot claim that active misrepresentation lured them into buying the guns. *See Corso,* 20 F.3d at 528 (explaining that defendant cannot rely on defense when there was no communication from official to defendant telling him that his acquisition was lawful); *Weitzenhoff,* 1 F.3d at 1535 (stating that appellants did not point to an official's erroneous statement on which they relied). Such a defense, in these circumstances, cannot be supported.

> [I]f [the defendant's] estoppel defense were permitted, it would allow convicted felons to withhold material facts from a federally licensed firearms dealer, elicit an erroneous response based on such non-disclosure, and then plead entrapment.

*Billue,* 994 F.2d at 1569.

■ Nor was there a legal predicate for the defense of entrapment by estoppel. In considering whether Taberdon ought to be characterized as a federal official or private dealer, we are not persuaded by *Tallmadge* and believe that the position of the Eleventh and Eighth Circuits, which is in accord with the *Tallmadge* dissent, is the more reasoned one. We hold that the gun dealer Bob Taberdon is a private individual; his license to sell firearms does not transform him into a government official.

We conclude that the Howells have failed to make a prima facie showing of entrapment by estoppel. Because the defendants provided neither a basis in law nor factual predicates from the evidence presented at trial for entrapment by estoppel, they were not entitled to an instruction on it as their theory of defense. The district court committed no error in rejecting the instruction. *See Scott,* 19 F.3d at 1245.

### C. *Mr. Howell's Armed Career Criminal Enhancement*

George Howell's final contentions concern the enhancement of his sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e). In an April 1983 state court bench trial conducted on stipulated facts, Mr. Howell was convicted of two simple burglaries of dwellings. On December 6, 1983, Mr. Howell also pled guilty to two residential burglaries.

■ Alleging procedural irregularities, Mr. Howell first challenges the constitutionality of his prior burglary convictions.[11] No claim is made that he was denied the right to counsel with respect to any of these convictions. These claims therefore are precluded by the recent decision of the Supreme Court of the United States in *Custis v. United States,* —— U.S. ——, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994). The *Custis* decision governs this case as it controls all litigation still on direct appeal at the time *Custis* was decided. *United States v. Killion,* 30 F.3d 844, 846 (7th Cir.1994); *United States v. Burnom,* 27 F.3d 283, 284 (7th Cir.1994).

■ Finally, Mr. Howell submits that his convictions for simple burglary cannot serve as a sufficient predicate for the enhancement permitted by § 924(e). Before sentencing, the district court reviewed Mr. Howell's previous convictions. It noted that the first two convictions were reported as *burglaries,* and therefore there was a question as to whether those crimes could be used to enhance the sentence. *See* Memorandum Opinion, 1993 WL 14975 (N.D.Ill. Jan. 21, 1993). The Illinois burglary statute (720 ILCS 5/19–1) is broader than the generic definition of "burglary." The crime of simple burglary in Illinois is committed when one enters without authority a building, housetrailer, watercraft, aircraft, or motor vehicle. Thus, the crime of which he was convicted could have been committed without entering a building, as required by § 924(e). *See Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). *Taylor* instructs that "[i]n a state whose burglary statutes include

11. Mr. Howell asserted (1) that his decision to raise no defense at a bench trial was tantamount to a guilty plea, for which he was entitled to all the procedural protection afforded individuals who plead guilty; (2) that he was not informed of his privilege against self-incrimination or of the right to confront his accusers; (3) that, although the record reflects that Mr. Howell surrendered these privileges by stipulating to the evidence, he did not *knowingly* relinquish these rights; (4) that his guilty plea was not knowing and voluntary, for he was not mentally competent to enter the plea.

entry of an automobile as well as a building, if the indictment or information and the jury instructions show that the defendant was charged only with burglary of a building and the jury necessarily had to find entry of a building to convict, then the Government should be allowed to use the conviction for enhancement." *Id.* at 602, 110 S.Ct. at 1260; *see also United States v. Davis,* 16 F.3d 212, 215 n. 4 (7th Cir.) (discussing the limitations that must be observed by the district courts in determining whether the state conviction is one for generic burglary), *cert. denied,* —— U.S. ——, 115 S.Ct. 354, 130 L.Ed.2d 309 (1994).

Accordingly, the district court ordered the parties to supplement the record before sentencing. *See* Memorandum Opinion, 1993 WL 14975 (N.D.Ill. Jan. 21, 1993). The government provided the information and the amended conviction of simple burglary. *See Taylor,* 495 U.S. at 602, 110 S.Ct. at 2160. The information issued against George Howell charged that, on February 10, 1982, he committed the offense of *residential burglary* by knowingly and without authority entering the dwelling place of (1) Emanuel Smith and (2) Ruth Foster with intent to commit therein a theft. The Certified Statement of Conviction, issued in the Circuit Court of Cook County, Illinois, stated that he was found guilty of "simple burglary—amended charge" and sentenced to 30 months probation (including work release). No other relevant documentation appears in the record.

In its Memorandum Opinion of April 26, 1993, the district court held that Mr. Howell had burglarized a building as required by *Taylor.* In that memorandum, the district court, noting that the defendant had agreed to a stipulated trial and received probation,[12] stated that "the only evidence at trial, which was stipulated, involved burglary in a building or structure." Tr. 146 at 9. To the extent that the district court referred to material other than the information, the instructions, and the certificate of conviction (which is the only evidence we have of the "amended charge" of simple burglary) to make its determination, it exceeded the permissible

bounds of *Taylor.* Nevertheless, when the documents to which the district court was permitted to refer under *Taylor* are read as a whole, it is clear that the burglarized structure was a building. The certificate of conviction, which memorializes the amendment of the original information, does not describe anew the structure that was the scene of the crime. Reference back to the original information, however, makes it clear that it was a building.

Mr. Howell also submits that, even if it is clear that the burglaries involved buildings, it is not clear that he actually entered them. Although there is certainly sufficient circumstantial evidence of his entry, we need not pursue this matter. *Taylor* makes it clear our inquiry is limited to an examination of the record of conviction. We need not inquire into the particulars of proof or the state's theory of the case.

### Conclusion

For the reasons discussed above, the judgments of the district court are affirmed.

AFFIRMED.

---

12. In a memorandum submitted to the district court, the defendant acknowledged that the disposition of his case had been the subject of an agreement and that he was aware of the disposition before the proceeding.