**UNITED STATES of America, Plaintiff,**

v.

**Cassidy McCORD, Defendant.**

**No. 4:CR95–3015.**

United States District Court,
D. Nebraska.

July 31, 1995.

Dorothy A. Walker, Mowbray, Walker Law Firm, Lincoln, NE, for Cassidy McCord.

Janice M. Lipovsky, Lancaster County Attorney, Lincoln, NE, for U.S.

## MEMORANDUM AND ORDER

KOPF, District Judge.

This matter is before the court on the Magistrate Judge's Memorandum, Order, and Recommendation (filing 17) and the objection to such Memorandum, Order and Recommendation (filing 23), filed by the Defendant as allowed by 28 U.S.C. § 636(b)(1)(C) and NELR 72.4.

I have conducted, pursuant to 28 U.S.C. § 636(b)(1) and NELR 72.4, a de novo review of the portions of the Recommendation to which objections have been made. Inasmuch as Judge Piester has fully, carefully, and correctly found the facts and applied the law, I need only state that the indictment against Defendant should not be dismissed for the reasons that the provisions under which the Defendant is charged (18 U.S.C. §§ 922(n) and 924(a)(1)(A)) are constitutional exercises of Congressional power under the Commerce Clause and are neither overbroad nor vague.

IT IS ORDERED:

1. the Magistrate Judge's Memorandum, Order and Recommendation (filing 17) recommending denial of Defendant's Amended Motion to Dismiss Indictment (filing 14) is adopted;

2. Defendant's objection to Magistrate Judge Piester's Memorandum, Order and Recommendation (filing 23) is denied.

## MEMORANDUM, ORDER and RECOMMENDATION

PIESTER, United States Magistrate Judge.

Defendant McCord has filed an amended motion to dismiss the indictment. (Filing 14.) For the reasons discussed more fully below, I shall recommend the motion be denied.

On March 16, 1995 Defendant McCord ("defendant") was indicted on one count of making a false statement to obtain a firearm in violation of 18 U.S.C. 924(a)(1)(A), and one count of unlawfully receiving a firearm shipped in interstate commerce in violation of 18 U.S.C. § 922(n). In an amended motion to dismiss (filing 14) defendant argues that the indictment should be dismissed because

1. The Commerce Clause provides that Congress shall have Power

   .    .    .    .    .

   To regulate Commerce with foreign Nations, and among the several States ...
   U.S. Const., Art. I, § 8, cl. 3.

2. Specifically:

   (q)(1) The Congress finds and declares that—
   (A) crime, particularly crime involving drugs and guns, is a pervasive, nationwide problem;
   (B) crime at the local level is exacerbated by the interstate movement of drugs, guns, and criminal gangs;
   (C) firearms and ammunition move easily in interstate commerce and have been found in increasing numbers in and around schools, as documented in numerous hearings in both the Judiciary Committee of the House of Representatives and Judiciary Committee of the Senate;
   (D) in fact, even before the sale of a firearm, the gun, its component parts, ammunition, and the raw materials from which they are made have considerably moved in interstate commerce;
   (E) while criminals freely move from State to State, ordinary citizens and foreign visitors may fear to travel to or through certain parts of the country due to concern about violent

subsection 922(n) exceeds Congress' power under the Commerce Clause, that subsection 924(a)(1)(A) is void for vagueness and that both subsections are unconstitutionally overbroad. I address each of these arguments separately.

### Commerce Clause

Defendant argues that Count II against her must be dismissed because 18 U.S.C. § 922(n) exceeds Congress' power under the Commerce Clause. In support of this argument defendant relies on the watershed case *United States v. Alfonso Lopez,* —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), in which the United States Supreme Court invalidated the Gun–Free School Zones Act of 1990, 18 U.S.C. § 922(q)(1)(A), holding that the Act exceeded Congress' authority to legislate under the Commerce Clause.[1] The Act made it a federal offense for any individual to knowingly possess a firearm at a place s/he knew or had reasonable cause to believe to be a school zone (1000 feet of a school).[2]

Although the Court has identified three broad categories of activity that Congress may regulate under its commerce power, here, as in *Lopez,* only the final category provides possible authority for regulating the

crime and gun violence, and parents may decline to send their children to school for the same reason;
(F) the occurrence of violent crime in school zones has resulted in a decline in the quality of education in our country;
(G) this decline in the quality of education has an adverse impact on interstate commerce and the foreign commerce of the United States;
(H) States, localities, and school systems find it almost impossible to handle gun-related crime by themselves; even States, localities, and school systems that have made strong efforts to prevent, detect, and punish gun-related crime find their efforts unavailing due in part to the failure or inability of other States or localities to take strong measures; and
(I) Congress has power, under the interstate commerce clause and other provisions of the Constitution, to enact measures to ensure the integrity and safety of the Nation's schools by enactment of this subsection.
(2)(A) *It shall be unlawful for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone.*

.    .    .    .    .

18 U.S.C. § 922(q)(1)(A) (emphasis added).

conduct here: Congress' power to regulate activities that "substantially affect" interstate commerce. *See Lopez,* —— U.S. at —— ——, 115 S.Ct. at 1629–30. In concluding that the Gun–Free School Zones Act failed under the "substantially affect" interstate commerce test, the Court reasoned in part:

Section 922(q) is a criminal statute that by its terms has nothing to do with "commerce" or any sort of economic enterprise, however broadly one might define those terms. Section 922(q) is not an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated. It cannot, therefore, be sustained under our cases upholding regulations of activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affects interstate commerce.

Second, § 922(q) contains no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce. For example, in *United States v. Bass,* 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), the Court interpreted former 18 U.S.C. § 1202(a), which made it a crime for a felon to "receiv[e], posses[s], or transpor[t] in commerce or affecting commerce . . . any firearm." 404 U.S., at 337, 92 S.Ct., at 517. The Court interpreted the possession component of § 1202(a) to require an additional nexus to interstate commerce both because the statute was ambiguous and because "unless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal-state balance." *Id.,* at 349, 92 S.Ct., at 523. The *Bass* Court set aside the conviction because although the Government had demonstrated that Bass had possessed a firearm, it had failed "to show the requisite nexus with interstate commerce." *Id.,* at 347, 92 S.Ct., at 522. The Court thus interpreted the statute to reserve the constitutional question whether Congress could regulate, without more, the "mere possession" of firearms. *See id.,* at 339, n. 4, 92 S.Ct., at 518, n. 4; *see also United States v. Five Gambling Devices,* 346 U.S. 441, 448, 74 S.Ct. 190, 194, 98 L.Ed. 179 (1953) (plurality opinion) ("The principle is old and deeply imbedded in our jurisprudence that this Court will construe a statute in a manner that requires decision of serious constitutional questions only if the statutory language leaves no reasonable alternative"). Unlike the statute in *Bass,* § 922(q) has no express jurisdictional element which might limit its reach to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce.

Although as part of our independent evaluation of constitutionality under the Commerce Clause we of course consider legislative findings, and indeed even congressional committee findings, regarding effect on interstate commerce, *see, e.g., Preseault v. ICC,* 494 U.S. 1, 17, 110 S.Ct. 914, 924–925, 108 L.Ed.2d 1 (1990), the Government concedes that "[n]either the statute nor its legislative history contain[s] express congressional findings regarding the effects upon interstate commerce of gun possession in a school zone." Brief for United States 5–6. We agree with the Government that Congress normally is not required to make formal findings as to the substantial burdens that an activity has on interstate commerce. *See McClung,* 379 U.S., at 304, 85 S.Ct., at 383–384; *see also Perez,* 402 U.S., at 156, 91 S.Ct., at 1362 ("Congress need [not] make particularized findings in order to legislate"). But to the extent that congressional findings would enable us to evaluate the legislative judgment that the activity in question substantially affected interstate commerce, even though no such substantial effect was visible to the naked eye, they are lacking here.[FN4]

---

4 We note that on September 13, 1994, President Clinton signed into law the Violent Crime Control and Law Enforcement Act of 1994, Pub.L. 103–322, 108 Stat. 1796. Section 320904 of that Act, id., at 2125, amends s 922(q) to include congressional findings regarding the effects of firearm possession in and around schools upon interstate and foreign commerce. The Government does not rely upon these subsequent findings as a substitute for the absence of findings in the first instance. Tr. of Oral Arg. 25 ("[W]e're not relying on them in the strict sense of the word, but we think that at a very mini-

mum they indicate that reasons can be identified for why Congress wanted to regulate this particular activity").

The Government argues that Congress has accumulated institutional expertise regarding the regulation of firearms through previous enactments. *Cf. Fullilove v. Klutznick,* 448 U.S. 448, 503, 100 S.Ct. 2758, 2787, 65 L.Ed.2d 902 (1980) (Powell, J., concurring). We agree, however, with the Fifth Circuit that importation of previous findings to justify § 922(q) is especially inappropriate here because the "prior federal enactments or Congressional findings [do not] speak to the subject matter of section 922(q) or its relationship to interstate commerce. Indeed, section 922(q) plows thoroughly new ground and represents a sharp break with the long-standing pattern of federal firearms legislation." 2 F.3d, at 1366.

.    .    .    .    .

The possession of a gun in a local school zone is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce. Respondent was a local student at a local school; there is no indication that he had recently moved in interstate commerce, and there is no requirement that his possession of the firearm have any concrete tie to interstate commerce.

*Id.* —— U.S. at ——–——, 115 S.Ct. at 1631–33. (footnote omitted).

In her Supplemental Brief defendant argues that 18 U.S.C. § 922(n) is inconsistent with Nebraska law, and that under the principles of *Lopez* exceeds Congress' power under the Commerce Clause. Section 922(n) provides:

It shall be unlawful for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce any firearm or ammunition or receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(n).

■ I first note that whether subsection 922(n) is inconsistent with Nebraska law is irrelevant for purposes of the Commerce Clause. So long as subsection 922(n) is a justifiable assertion of congressional authority under the legal standards governing the Commerce Clause, the fact that it may run contrary to Nebraska law is immaterial. Thus, the only issue is whether subsection 922(n) is sustainable under the Court's Commerce Clause jurisprudence. I conclude that it is.

Defendant attacks the language of subsection 922(n) criminalizing the receipt of "any firearm or ammunition which has been shipped or transported in interstate or foreign commerce," 18 U.S.C. § 922(n), arguing that

the nexus between [subsection 922(n) ] prohibitions and the authority of Congress to regulate interstate commerce has widened so broadly so as to lose any meaningful relationship between the federal crime [section 922(n) ] attempts to create and any activity which substantially affects interstate commerce. The indictment does not accuse the Defendant of causing the firearm to be transported through interstate commerce, but only purchasing it *after* it had come to rest in Nebraska, a state which permits the defendant to purchase, possess, and own the firearm. The defendant is not accused of conducting any activity that affects interstate commerce in any substantial way. She did not order the firearm. She did not cause it to travel in interstate commerce. The seller caused the firearm to travel in interstate commerce. The statute's overbreadth has swallowed any legitimate purpose Congress has in regulating "those activities that substantially affect interstate commerce." [*Maryland v. Wirtz,* 392 U.S. 183, 196, 88 S.Ct. 2017, 2024, 20 L.Ed.2d 1020 (1968) ].

(Supplemental Brief, at 9) (emphasis in original). Thus, the upshot of defendant's argument is that mere possession of a firearm that once traveled in interstate commerce fails to provide a sufficient nexus to interstate commerce to justify congressional authority under the Commerce Clause. I disagree. Although I have found no cases confronting a Commerce Clause challenge to

subsection 18 U.S.C. § 922(n), cases construing predecessor provisions to subsection 922(n) lead me to the conclusion that subsection 922(n) requires a sufficient interstate commerce nexus to survive Commerce Clause scrutiny.[3]

The former 18 U.S.C. § 1202(a), which was repealed by the enactment of subsection 922(n) in 1986, made it unlawful for any person who "has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony" to "receive[ ], possess[ ], or transport[ ] in commerce or affecting commerce ... any firearm...." In *United States v. Bass*, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), the Court faced the issue of whether the "in commerce or affecting commerce" language of subsection 1202(a) applied to all three separate offenses: receipt, possession or transportation. Arguably, that language applied only to transportation, thus raising the question of whether a conviction for mere possession could stand without some additional showing by the government of a connection to interstate commerce. The Court first held that the "in commerce or affecting commerce" language applied to all three separate offenses. *See id.* at 347–50, 92 S.Ct. at 522–24. Accordingly, a conviction for mere possession had to be supported by a showing of a nexus with interstate commerce. The Court noted that one of the ways the government could meet this burden was by "demonstrat[ing] that the firearm received has previously traveled in interstate commerce." *Id.* at 350, 92 S.Ct. at 523.

In *Scarborough v. United States*, 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977), the Court held that under subsection 1202(a), proof that the possessed firearm previously traveled in interstate commerce was sufficient to satisfy the statutorily required nexus between the possession of a firearm by a convicted felon and commerce. Although *Scarborough* was a possession case rather than a receipt case, the Court noted parenthetically that there was no congressional intent to support a distinction between the

two: "Congress was not particularly concerned with the impact on commerce except as a means to insure the constitutionality of Title VII.... All indications are that Congress meant to reach possessions broadly." *Id.* at 575 n. 11, 97 S.Ct. at 1969 n. 11. *See also United States v. Lopez*, 2 F.3d 1342, 1347 (5th Cir.1994) (recognizing *Scarborough* holding that commerce nexus satisfied upon showing that possessed firearm had traveled at some time in interstate commerce); *United States v. Sherbondy*, 865 F.2d 996, 999 (9th Cir.1988) (same); *United States v. Turner* (unpublished decision), available at 1988 WL 103331, at *2 (6th Cir.1988) (same), *cert. denied*, 488 U.S. 1033, 109 S.Ct. 845, 102 L.Ed.2d 977 (1989); *United States v. Gillies*, 851 F.2d 492, 494–95 (1st Cir.) (same), *cert. denied*, 488 U.S. 857, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988); *United States v. Travisano*, 724 F.2d 341, 347 (2nd Cir.1983) (same)

Former subsection 18 U.S.C. § 922(h)(1), predecessor to subsection 922(n) and complement to former subsection 1202(a), made it unlawful for any person "who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year," to "receive any firearm or ammunition which has been shipped or transported in interstate commerce." In *Barrett v. United States*, 423 U.S. 212, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976), the Court held that subsection 922(h)(1) applied to a felon's purchase of a firearm that, independently of the felon's receipt, had previously moved in interstate commerce. The Court reasoned:

> To hold, as the Court did in *Bass*, 404 U.S., at 350, 92 S.Ct., at 523, that [subsection 1202(a) ], directed to a receipt of any firearm "in commerce or affecting commerce," requires only a showing that the firearm received previously traveled in interstate commerce, but that [subsection 922(h) ], relating to a receipt of any firearm "which has been shipped or transported in interstate ... commerce," is limited to the receipt of the firearm as part of an interstate movement, would be inconsistent construc-

---

3. Defendant does not specifically address a Commerce Clause challenge as to Count I, making a false statement to obtain a firearm in violation of

18 U.S.C. 924(a)(1)(A). I therefore do not address that issue.

tion of sections of the same Act and, indeed, would be downgrading the stronger language and upgrading the weaker.

We conclude that § 922(h) covers the intrastate receipt, such as petitioner's purchase here, of a firearm that previously had moved in interstate commerce.

*Id.* at 224–25, 96 S.Ct. at 504–05; *see also Lopez,* 2 F.3d at 1347 n. 8 (recognizing *Barrett* holding that nexus requirement for receipt violation under subsection 922(h) satisfied so long as the firearm has previously moved in interstate commerce); *United States v. Legrand* (unpublished decision), available at 1992 WL 231058, at *2 (4th Cir. 1992) (same); *United States v. Fisher* (unpublished decision), available at 1989 WL 85747, at *2 (9th Cir.1989) (same); *United States v. Giacalone* (unpublished decision), available at 1987 WL 37919, at *1 (6th Cir. 1987) (same); *United States v. Butler,* 541 F.2d 730, 736 (8th Cir.1976) ("[u]nder the receipt laws of § 922(h) and § 1202(a) the felon need not even know that the gun had traveled in interstate commerce. The interstate commerce element is satisfied by proof that the gun (not the felon in possession) has passed at some time in interstate commerce"); *cf. also United States v. Goerlich,* 729 F.2d 1168, 1170 n. 1 (8th Cir.1984) (receipt provisions of subsection 1202(a) and subsection 922(h)(1) "virtually identical").

These decisions all contradict defendant's assertion that mere possession of a firearm that once traveled in interstate commerce fails to provide a sufficient interstate commerce nexus for purposes of the Commerce Clause. The only meaningful distinction between the former subsection 1202(a) and subsection 922(n) here is that 922(n) is triggered by indictment, rather than conviction, and defendant is silent on how that distinction bears on the nexus analysis. Subsection 922(n) is essentially a reenactment of former subsection 922(h), and decisions construing 922(h) are equally applicable to the 922(n) context. *See United States v. Chambers,* 922 F.2d 228, 233 n. 8 (5th Cir.1991) recognizing the "common presumption that when Congress re-enacts a statute without overturning prior judicial constructions of it, the earlier interpretations should be followed" (quoting

*United States v. Falletta,* 523 F.2d 1198, 1201 (5th Cir.1975)), *reh denied* (Feb. 21, 1991).

I do not read *Lopez* as calling any of these prior decisions into doubt. As explained by the Fifth Circuit in *Lopez,* with a few recent exceptions, the Gun–Free School Zones Act of 1990 was unique among federal firearm possession provisions in failing to require the government to "prove a connection to commerce, or other federalizing feature, in individual cases." *Lopez,* 2 F.3d at 1347. In support of this conclusion, the Fifth Circuit outlined at length the development and history of federal firearm control legislation in the United States, distinguishing the Gun–Free School Zones Act of 1990 from other federal firearm possession provisions which required a more direct tie to interstate commerce. In the course of that discussion, the court identified section 922(n) as one of a group of amendments "that contained express interstate commerce nexus requirements without diluting [those preexisting] requirements." *Id.* at 1355. It is not at all clear how *Lopez* can be read to apply to invalidate 922(n).

Defendant has failed to explain how *Lopez* undermines the authority of those decisions finding predecessor provisions of 922(n) to contain a sufficient nexus to interstate commerce. Nor has defendant explained how subsection 922(n) is analogous to the Gun–Free School Zones Act of 1990, which, unlike subsection 922(n), contained no explicit tie to interstate commerce, nor any jurisdictional component to ensure that a nexus to interstate commerce was present. *See Lopez, supra.* Agreeing with defendant that subsection 922(n) violates the Commerce Clause would have the practical effect of invalidating a substantial number of similarly (if not identically) worded federal firearm possession provisions predating the Gun–Free School Zones Act of 1990, something I do not read the *Lopez* opinion as reaching. As such, I find no basis for concluding that subsection 922(n) fails to require a sufficient interstate commerce nexus to survive Commerce Clause scrutiny, and this argument provides no basis for dismissal.

### Vagueness

Defendant next argues that Count I against her must be dismissed because 18

U.S.C. § 924(a)(1)(A) is unconstitutionally vague. Subsection 924(a)(1) provides in full:

(a)(1) Except as otherwise provided in this subsection, subsection (b), (c), or (f) of this section, or in section 929, whoever—

(A) knowingly makes any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter or in applying for any license or exemption or relief from disability under the provisions of this chapter;

(B) knowingly violates subsection (a)(4), (f), (k), (r), (v), or (w) of section 922;

(C) knowingly imports or brings into the United States or any possession thereof any firearm or ammunition in violation of section 922(l); or

(D) willfully violates any other provision of this chapter,

shall be fined under this title, imprisoned not more than five years, or both.

18 U.S.C. § 924(a)(1). Defendant, charged under subsection 924(a)(1)(A), is charged with falsely stating on an ATF Form 4473[4] that she was not under indictment or information in any court for a crime punishable by imprisonment for a term exceeding one year, knowing such statement to be false. (*See* Filing 1.)

Defendant asserts that to violate subsection 924(a)(1)(A), an accused "must have actual knowledge of what information the gun

dealer must keep in his or her records according to rules promulgated by the Secretary of the Treasury," and also "must have actual knowledge that the information she is providing violates the rules, which are not in the statute." (Defendant's Brief, at 9.) It is unclear how any of defendant's cited authorities support either of these assertions. Defendant cites to *United States v. Collins*, 957 F.2d 72 (2nd Cir.), *cert. denied* 504 U.S. 944, 112 S.Ct. 2285, 119 L.Ed.2d 210 (1992), in which the Second Circuit confronted a challenge to a conviction of dealing in firearms without a federal firearms license in violation of 18 U.S.C. § 922(a)(1). The former subsection 922(a)(1) prohibited "any person ... except a ... licensed [firearms] dealer, [from engaging] in the business of ... dealing in firearms," and thus contained no scienter requirement. *See Collins*, 957 F.2d at 74. A subsequent amendment to the penalty provision accompanying subsection 922(a)(1), however, added a willfulness requirement. *See* 18 U.S.C. § 924(a)(1)(D), reprinted *supra*. The court therefore held it was error not to charge the jury that willfulness was an element of the crime. *See Collins*, 957 F.2d at 74–75.

■ Defendant apparently believes *Collins* imputes a "willfulness" or "actual knowledge" requirement to Count I here. (*See* Defendant's Brief, at 6–7.) Yet it is quite clear from 18 U.S.C. § 924(a)(1), reprinted *supra*, that the "willfulness" requirement is

---

**4.** The Bureau of Alcohol, Tobacco and Firearms Firearm Transaction Record, ATF Form 4473, requires the buyer to certify the following questions (among others) with a "yes" or a "no" answer:

(a) Are you under indictment or information* in any court for a crime punishable by imprisonment for a term exceeding one year? * A formal accusation of a crime made by a prosecuting attorney, as distinguished from an indictment presented by a grand jury.

(b) Have you been convicted in any court of a crime punishable by imprisonment for a term exceeding one year? (NOTE: A "yes" answer is necessary if the judge could have given a sentence of more than one year. A "yes" answer is not required if you have been pardoned for the crime or the conviction has been expunged or set aside, or you have had your civil rights restored and, under the law where the conviction occurred, you are not prohibited from receiving or possessing any firearm.)

*See United States v. Howell*, 37 F.3d 1197, 1201 n. 1 (7th Cir.1994), *mandate recalled*, 37 F.3d 1207 (7th Cir.1994), *reh and suggestion for reh en banc denied*, (Dec. 21, 1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1810, 131 L.Ed.2d 735 (1995). The form further states that "[a]n untruthful answer may subject you to criminal prosecution." *Id.* At the end of the questions the form requires a signature of the buyer below the following statement:

I hereby certify that the answers to the above are true and correct. I understand that a person who answers "Yes" to any of the above questions is prohibited from purchasing and/or possessing a firearm, except as otherwise provided by Federal law. I also understand that the making of any false oral or written statement or the exhibiting of any false or misrepresented identification with respect to this transaction is a crime punishable as a felony.

*Id.*

located within an entirely different penalty provision (subsection (D)) than that under which defendant is charged in Count I (subsection (A)). Nor does the anti-structuring statute addressed in *Ratzlaf v. United States,* —— U.S. ——, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994) (which contains an explicit willfulness requirement[5]) cited by defendant change the fact that willfulness is simply not an element of subsection 924(a)(1)(A).

What is an element of subsection 924(a)(1)(A) is knowledge. Contrary to defendant's assertion, subsection 924(a)(1)(A) is not a specific intent crime. The predecessor to subsection 924(a)(1), subsection 924(a), provided:

(a) Whoever violates any provision of this chapter *or knowingly makes any false statement or representation with respect to the information required by the provisions of this chapter to be kept in the records of a person licensed under this chapter, or in applying for any license or exemption or relief from disability under the provisions of this chapter,* shall be fined not more than $5,000, or imprisoned not more than five years, or both, and shall become eligible for parole as the Board of Parole shall determine.

18 U.S.C. § 924(a) (emphasis added.) In *United States v. Hawkins,* 794 F.2d 589 (11th Cir.), *reh. denied,* 801 F.2d 404 (11th Cir. 1986), the Eleventh Circuit, following the lead of other circuits, held that subsection 924(a)(1) was not a specific intent crime. *See id.* at 591; *United States v. Cornett,* 484 F.2d 1365, 1368 (6th Cir.1973); *United States v. Cochran,* 546 F.2d 27, 29 (5th Cir.1977) (approving *Cornett* in dicta, and articulating government's burden as proving "that defendant gave false information with the general

intention of deceiving or likely to deceive the firearms dealers"); *United States v. Mongiello,* 442 F.Supp. 835, 838 (E.D.Pa.1977).

Defendant has presented absolutely no authority suggesting that subsection 924(a)(1) requires "actual knowledge of what information the gun dealer must keep in his or her records according to rules promulgated by the Secretary of the Treasury," or "that the information she is providing violates the rules, which are not in the statute." A conviction under subsection 924(a)(1)(A) requires only that the defendant knowingly make a false statement with respect to information that the law requires a federally licensed firearms dealer to keep. *See United States v. Howell,* 37 F.3d 1197, 1202 (7th Cir.1994), *mandate recalled,* 37 F.3d 1207 (7th Cir.1994), *reh and suggestion for reh en banc denied,* (Dec. 21, 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1810, 131 L.Ed.2d 735 (1995). That is, the government must only show that defendant knowingly answered "no" on the ATF 4473 Form when asked if she was "under indictment or information in any court for a crime punishable by imprisonment for a term exceeding one year?" when in fact she knew that she was. *See* note 4 *supra.*[6] This is not a vague or confusing inquiry:

[Defendant] contends that section 924(a)(1)(A) is unconstitutionally vague. A statute is unconstitutionally vague if it fails to describe a crime sufficiently to allow an ordinary person to understand what conduct is prohibited. *Panther v. Hames,* 991 F.2d 576, 578 (9th Cir.1993). Because [defendant's] conduct does not implicate his First Amendment rights, we examine his vagueness challenge under the particular

---

5. A person may be criminally penalized for "willfully violating" the anti-structuring provision. *See* 31 U.S.C. § 5322(a); *Ratzlaf,* —— U.S. at ——, 114 S.Ct. at 657.

6. Defendant further questions the use of the term "indictment," querying whether one charged by an "information" or a "complaint" could violate subsection 924(a)(1)(A) by answering "no" when asked if she was "under indictment or information in any court for a crime punishable by imprisonment for a term exceeding one year?" (Defendant's Brief, at 9; *see* note 4 *supra.*) First,

defendant's queries are entirely hypothetical. Nowhere has defendant asserted that *she* was under an "information" or a "complaint" rather than an "indictment" when she completed her ATF 4473 Form and that *her* constitutional rights were arguably violated by any ambiguity. In any case, the Form defines "information" to eliminate ambiguity: "[a] formal accusation of a crime *made by a prosecuting attorney,* as distinguished from an indictment *presented by a grand jury." See* note 4 *supra.* This argument is meritless.

facts of this case. *United States v. Tabacca,* 924 F.2d 906, 912 (9th Cir.1991).

The language of section 924(a)(1)(A) plainly forbids the giving of false information in the purchase of a firearm. Further, each form that [defendant] signed notified him that the giving of false information in connection with the purchase of his firearms was a felony. [Defendant] thus could have had no reasonable doubt that his giving of false information was illegal.

*United States v. Eljammal* (unpublished decision), available at 1994 WL 242151, at *2 (9th Cir.1994). Similarly, the ATF Form 4473 defendant allegedly signed here clearly informed her that the giving of false information in connection with a firearms purchase was a felony. *See* note 4 *supra.* Both the statute, and the ATF Form 4473 itself, are such that an ordinary person would understand that falsely answering the indictment question on the Form would subject the buyer to federal criminal liability. This ground provides no basis for dismissal.

### Overbreadth

Finally, defendant argues that subsections 922(n) and 924(a) are unconstitutionally overbroad. The parameters of this argument are less than clear; it appears this is not a "new" argument at all but rather defendant's Commerce Clause argument under a different label. That is, defendant appears to be arguing only that subsection 922(n) is overbroad because it "sweeps within its prohibitions other activities which are constitutionally protected" (*id.* at 9), in that it exceeds Congress' constitutional legislative authority under the Commerce Clause, thereby invading "the federally protected constitutional right of the State of Nebraska to define and enforce its own criminal law...." (*Id.* at 10.) As explained above, I believe subsection 922(n) is well within Congress' legislative authority under the Commerce Clause. As such, it does not "sweep[ ] within its prohibitions other activities which are constitutionally protected." This argument presents no basis for dismissal, and I shall recommend that defendant's motion to dismiss be denied.

**IT THEREFORE HEREBY IS ORDERED** that trial of this matter is continued until further order of this court pending resolution of defendant's motion to dismiss (Filing 14.)

**FURTHER, IT HEREBY IS RECOMMENDED** to the Honorable Richard G. Kopf, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), that defendant's amended motion to dismiss (filing 14) be denied.

The parties are notified that unless objection is made within ten days after being served with a copy of this recommendation, they may be held to have waived any right they may have to appeal the court's order adopting this recommendation.