**UNITED STATES**

v.

**Warren R. JAMES, 219 78 5576, Corporal (E–4), U.S. Marine Corps.**

**NMCM 86 0094.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 27 Aug. 1985.

Decided 22 July 1986.

LtCol Richard E. Ouellette, USMC, Appellate Defense Counsel.

LCDR Robert J. Smith, JAGC, USN, Appellate Defense Counsel.

LT Georjan D. Overman, JAGC, USNR, Appellate Government Counsel.

Before KERCHEVAL, Senior Judge, and RAPP and GRANT, JJ.

PER CURIAM:

Contrary to his pleas, appellant was found guilty, by general court-martial consisting of officer members, of one specification of conspiracy to commit robbery and one specification of robbery in violation of, respectively, Articles 81 and 122 of the Uniform Code of Military Justice, 10 U.S.C. sections 881 and 922. He was sentenced to confinement for three years and one day, total forfeitures of all pay and allowances, reduction to pay grade E–1, and to be discharged from the Marine Corps with a dishonorable discharge. The convening authority approved the sentence as adjudged.

The charges in the instant case arose from the robbery of Lance Corporal (LCPL) B by three unidentified fellow Marines on the evening of 18 April 1985 at Camp Horno, California. While walking back to his barracks from the Camp Horno Enlisted Club at about 2200 to midnight that evening, LCPL B was approached by two males who asked him his name and what unit he was attached to. Suddenly, a third person struck LCPL B from behind, causing him to fall to his knees, and the three began to punch and kick him as he yelled towards his nearby barracks for assistance. While they pummeled him, one of the three assailants wrested LCPL B's wallet from his trouser pocket. Meanwhile, hearing LCPL B's screams for help and looking out the window to see a "cluster of people," Corporal (CPL) C emerged from the barracks and witnessed the assault. CPL C yelled for help himself and approached the victim and his attackers in order to assist LCPL B. The three assailants immediately fled—two in one direction and the third in another—and CPL C went to LCPL B's aid. Upon assuring himself that LCPL B was not in need of immediate medical attention, CPL C chased after the two assailants. CPL T, an acquaintance of CPL C and LCPL B, joined CPL C in the chase, which led to the parking lot. In the darkness of the parking lot, CPLs C and T lost sight of the perpetrators, but, upon hearing a car start up, walked towards it and observed two individuals slinking down in the front seat pretending to sleep. They memorized the license plate of the vehicle. When CPL C started yelling for the officer of the day,

the car was put into drive and "crept" out of the parking lot. As the vehicle left the area, they watched it stop and pick up a passenger before it finally departed. The next day, as a result of the tracing of the license plate, the owner of the vehicle, LCPL Green, was interrogated by the Naval Investigative Service and provided a statement implicating himself, LCPL Hickman, Private First Class (PFC) Smith, and the appellant in the robbery. The statement admitted, in short, that, while the four were out drinking and driving around in Green's car on the evening in question, they discussed their respective financial inadequacies and decided that, pursuant to LCPL Hickman's suggestion, they would "jump" someone at Camp Horno. The statement went on to admit that Hickman, Smith, and the appellant exited the vehicle at Camp Horno, while Green waited at the wheel, and returned shortly thereafter, joking about having "jumped" someone and in the possession of a wallet which contained $21 in cash among its contents.

Before his trial, appellant, pursuant to Rule for Courts-Martial (R.C.M.) 704 and *United States v. Villines*, 13 M.J. 46 (C.M.A.1982), requested the convening authority to grant testimonial immunity to alleged co-conspirator PFC Smith in order to compel Smith's testimony as a defense witness at appellant's trial. Citing *Villines* for the proposition that "immunity may be denied where there is an important command interest supporting such a denial," the convening authority denied the request because "immunizing Private First Class Smith would make it extremely difficult to try him for the same offenses with which [the appellant] is charged." Appellate Exhibit V. In a pretrial motion for appropriate relief, appellant requested the military judge to abate the proceedings until an appropriate convening authority granted the immunity request. He called PFC Smith to the stand on the motion to demonstrate Smith's unwillingness to testify without a grant of immunity, and urged that Smith's testimony "would be of such central importance to the defense case that it is essential to a fair trial." R.C.M. 704(e)(1). In order to demon-

strate that Smith's testimony was "clearly exculpatory" with respect to both the conspiracy and robbery charges, appellant provided the military judge with the expected testimony of PFC Smith, which read, in pertinent part, as follows:

> During the ride up to Horno Hickman made a statement "I should roll somebody." *Nobody answered. I did not see anybody make any kind of physical motion in response.* Hickman did not say anything else about robbing anybody on the way to Horno. When we arrived at Horno we Parked [sic] in a Parking [sic] lot. *Hickman got out of the car first at Horno. Hickman walked out of sight of the car. I got out of the car about two minutes later and went to the bathroom. Corporal James and Lance Corporal Green were still in the car when I got out. I came back and got in the car about 5 minutes later. Corporal James, Lance Corporal Green and Lance Corporal Hickman were all in the car.*

Appellate Exhibit VI (emphasis added). In denying the defense motion, the military judge found that

> [t]he proffered testimony of Private First Class Smith is essentially that he was in the vehicle with the alleged co-conspirators. That he did not hear of or participate in a conspiracy to rob anyone; that he did not participate in any subsequent robbery, that he never saw the accused participate in any robbery and that he never talked to the accused about robbing anybody. Basically, a claim of innocent presence at the time of the alleged offenses on his, Private First Class Smith's, part. The proffered testimony is relevant and material in relation to the accused's trial and would be admissible at trial. However, *Private First Class Smith's proffered testimony is not of such central importance to the defense case that it is essential to a fair trial.* The convening authority has an important command interest supporting his denial for the request for immunization of Private First Class Smith because of po-

tential subsequent difficulties in the trial of Private First Class Smith. I will not, therefore, direct the convening authority to grant testimonial immunity to Private First Class Smith or abate the proceedings against the accused.

R. 43–44 (emphasis added).

In his sole assignment of error before this Court, appellant maintains that the military judge erred when he denied the defense motion requesting him to direct the convening authority to immunize PFC Smith or to abate the trial proceedings until Smith was immunized. In support of his position, appellant again cites Rule for Courts-Martial 704(e), which contains specific provisions with respect to defense-requested immunity, and *United States v. Villines,* 13 M.J. 46 (C.M.A.1982), upon which R.C.M. 704(e) is based. *Manual for Courts-Martial, United States, 1984* (MCM), Appendix 21, Analysis at A21–35. While the Court of Military Appeals in *Villines* addressed the issue of defense-requested immunity for an exculpatory witness, the case pre-dated the implementation of the Rules for Courts-Martial which are set forth in the 1984 Manual for Courts-Martial. Thus, insofar as it requires us to interpret R.C.M. 704(e), the instant case is one of first impression. Upon consideration of R.C.M. 704(e) and *Villines,* which, as we note above, the Drafters' Analysis of R.C.M. 704(e) indicates is still applicable, we find appellant's assignment of error to be without merit.

Rule for Courts-Martial 704(e) provides, in pertinent part, that

the decision whether to grant immunity is a matter within the sole discretion of the appropriate general court-martial convening authority. However, if a defense request to immunize a witness has been denied, the military judge may, upon motion by the defense, grant appropriate relief directing that either an appropriate convening authority grant testimonial immunity to a defense witness or, as to the affected charges and specifications, the proceedings against the accused be abated, upon findings, that:

(1) *The witness' testimony would be of such central importance to the defense case that it is essential to a fair trial;* and

(2) The witness intends to invoke the right against self-incrimination to the extent permitted by law if called to testify.

(Emphasis added). We agree with the military judge's determination that the requested witness's "proffered testimony is not of such central importance to the defense case that it is essential to a fair trial."

■ In *United States v. Villines, supra,* a decision imparting an opinion from each of the three judges on the Court of Military Appeals, Judge Fletcher's lead opinion concluded that the "appellant has an affirmative and heavy burden to establish that the prosecutorial authorities in the exercise of these powers [those "unique powers," such as that of witness immunization, given to prosecutorial authorities in order "to protect the public interest through effective law enforcement." *Villines,* 13 M.J. at 55] denied him *clearly exculpatory* evidence." *Villines,* 13 M.J. at 55 (emphasis added) (citing *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *Government of Virgin Islands v. Smith,* 615 F.2d 964 (3d Cir.1980)). We hold that the *Villines* "clearly exculpatory" standard, characterizing the probative value of the prospective testimony of a witness for whom the defense requests a grant of immunity, is the standard to be applied in determining whether said witness's testimony is "of such central importance to the defense case that it is essential to a fair trial" under R.C.M. 704(e)(1). This requirement enunciates a far higher standard of probativeness than, for example, the mere "any tendency" standard for the determination of relevance.[1] To be considered

---

1. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Military

"clearly exculpatory," the prospective testimony must be capable of being characterized as "'evidence which *clearly negates* ... guilt.'" *United States v. Florenhoft*, 714 F.2d 708, 712 (7th Cir.1983) (emphasis added) (quoting *United States v. Dorfman*, 532 F.Supp. 1118, 1133 (N.D.Ill.1981)). Exculpatory testimony which falls short of this standard is not "of such central importance ... that it is essential to a fair trial." R.C.M. 704(e)(1).

■ In the instant case, the expected testimony of the witness for whom the appellant requested immunity, PFC Smith, is marginally exculpatory at best. It established only that, during the time he was in the presence of appellant and the two other co-conspirators on the evening of the robbery, Smith observed neither an outward manifestation of agreement on the part of appellant to engage in a robbery nor the actual involvement of appellant in a robbery. The expected testimony also established, however, that Smith was not with appellant and the other co-conspirators at all times during the relevant time period. Thus, his prospective testimony does little to rebut (1) the evidence concerning how the robbery occurred, which was strongly suggestive of the formulation of a plan on the part of the robbers, and (2) the evidence presented through the testimony of and admission of the prior statement of LCPL Green that they had discussed robbing someone in order to alleviate their financial distress; that they had gone up to Camp Horno at LCPL Hickman's suggestion for the purpose of robbing someone; that Hickman, PFC Smith, and the appellant exited the car together when it was parked in the parking lot at Camp Horno; that Hickman came back with a wallet; that the appellant and Smith came running back to the car; that they discussed how they had committed the robbery; and that there was joking about the robbery and discussion about how they would split up the loot derived therefrom. Not being clearly exculpatory, we find that the military judge did not err when he determined

Rule of Evidence 401, MCM, Part III at 18–19

that the prospective testimony was not of such central importance to appellant's case that it was essential to a fair trial.

Accordingly, the findings and sentence, as approved on review below, are affirmed.